**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FRANCISMAR GAMITTO DE SOUZA,
    Petitioner,

v.

DAVID WESLING, et al.,
    Respondents.

Case  No. 1:26-cv-12059-ADB

**PETITIONER'S MOTION TO ENFORCE JUDGMENT**
**AND FOR IMMEDIATE RELEASE**

Petitioner Francismar Gamitto de Souza respectfully moves this Court, pursuant to its inherent authority to enforce its own judgments and 28 U.S.C. § 2241, to enforce the Court's May 15, 2026 Order and Judgment [ECF No. 8] granting his petition for a writ of habeas corpus and ordering Respondents to provide Petitioner a custody redetermination hearing. As set forth below, Respondents did not comply with that Order. Although an Immigration Judge convened custody redetermination hearing on May 21, 2026, the proceeding was constitutionally deficient and therefore did not provide the hearing under 8 U.S.C. § 1226(a) that this Court ordered. Petitioner accordingly requests that the Court order Respondents to release Petitioner immediately, subject to reasonable conditions of supervision to be identified and imposed within seven days; or, in the alternative, order Respondents to provide Petitioner a new bond hearing that comports with the Due Process Clause and controlling First Circuit precedent. Petitioner further requests that the Court rule on this motion on an expedited basis, as Petitioner's final merits hearing is scheduled for July 28, 2026, and he remains detained in the interim.

## I.    <u>Introduction</u>

On May 15, 2026, this Court granted Petitioner's habeas petition and ordered Respondents to provide him "a bond hearing under 8 U.S.C. § 1226(a) within 10 days." [ECF

No. 8]. The Court further enjoined Respondents "from denying Petitioner bond on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2)" and directed the entry of final judgment in Petitioner's favor. *Id.*

At the May 21, 2026 proceeding, the immigration judge ("IJ") denied bond, finding the Petitioner a flight risk, resting her decision on uncorroborated, decades-old allegation in a Form I-213, which she deemed "inherently reliable," while never mentioning, let alone evaluating, the substantial evidentiary submission Petitioner placed before her. Although the IJ concluded that "no bond amount" could "ameliorate his risk of flight," the IJ did not meaningfully consider any non-monetary conditions or alternatives to detention that exist precisely to secure a noncitizen's future appearances. On indistinguishable facts, sessions of this Court have repeatedly held that such a hearing fails to comply with the ordered relief. Indeed, on a materially identical bond order, another session of this Court recently found the flight-risk denial legally deficient and ordered the petitioner's immediate release. *See Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 1453510 (D. Mass. May 22, 2026). The same result is warranted here.

## II.    **Background**

Petitioner is a native of Brazil who has lived in the United States for more than two decades and is detained at the Plymouth County Correctional Facility. He filed a petition for a writ of habeas corpus challenging his detention without a bond hearing. [ECF No. 1]. Recognizing that the issues were controlled by *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602 (D. Mass. Sept. 30, 2025), the Court held that Petitioner is subject to the discretionary detention framework of 8 U.S.C. § 1226(a) and "entitled to a bond hearing," that he had not received one, and that "his detention is unlawful." [ECF No. 8]. The Court

granted the petition and ordered Respondents to provide a § 1226(a) bond hearing within ten days, enjoined them from denying bond on a § 1225(b)(2) basis, and directed a status report. *Id.*

Respondents held a custody determination hearing before the Chelmsford Immigration Court on May 21, 2026. The IJ admitted three exhibits, the habeas order, the evidence submitted by the Department of Homeland Security ("DHS") (Exhibit 2), and Petitioner's own evidentiary submission filed on May 20, 2026 (Exhibit 3)[1]. DHS argued that Petitioner was both a danger to the community, citing a 2014 Malden District Court assault-and-battery case and an earlier charge that was not prosecuted, and a flight risk, based principally on the assertion in the Form I-213 that Petitioner had allegedly presented fraudulent documents when he sought admission around 2001.

Through counsel, Petitioner presented a substantial contrary record and proffer, including that he has two United States citizen children; that he is eligible for Cancellation of Removal under Section 240A(b) of the Immigration and Nationality Act; that he had previously filed an application for asylum and files his taxes; that, although he was found guilty of a single count of assault and battery on a family or household member in the 2014 case, he received a one-year suspended sentence with all other charges dismissed and served no period of incarceration; and that he completed court-ordered anger-management, had his probation terminated, and has had no contact with law enforcement in approximately ten years. Petitioner's documentary submission (Exhibit 3) spanned roughly eighty pages.

The IJ denied bond, finding Petitioner "a flight risk by a preponderance of the evidence" and that "there is no bond amount that will ameliorate his risk of flight." *See* Exh. 1. The IJ explained that she "bases its findings based on the information on the I-213, which is an

---

[1] Redacted copies of Exhibits 2 and 3 (the evidence submitted to the immigration judge by the Department of Homeland Security and by Petitioner, respectively) are filed as exhibits to this motion. A USB drive containing the audio recording of the May 21, 2026 bond hearing will be conventionally filed separately as Exhibit 4.

inherently reliable . . . document," reasoning that the I-213 reflects the Petitioner "presented fraudulent documents to immigration officials" around 2001, that he "has a disregard for immigration law" because "he tried to enter illegally," and that "with regards to his convictions . . . he has a disregard for the law, notwithstanding the passage of time." The IJ did not mention Petitioner's evidentiary submission, did not address any of the equities or record evidence he submitted, and did not discuss any alternative to detention or condition of supervision. Another session of this Court has found a near-verbatim bond order denying bond because "there is no bond amount to mitigate the risk of flight" was legally deficient. *See Vargas*, 2026 WL 1453510, at *8, *11.

### III.    **Legal Standard**

A district court possesses authority to enforce its own judgments, including a judgment granting habeas relief, and may order the relief necessary to secure compliance. Where this Court has ordered a § 1226(a) bond hearing as habeas relief, Respondents do not satisfy that Order by holding a proceeding that fails to comport with the constitutional and statutory requirements governing such hearings. Sessions of this Court have accordingly entertained motions to enforce and ordered release where the bond hearing provided was constitutionally deficient. *See Martinez Aguilar v. McDonald*, No. 25-cv-13638-LTS, ECF No. 17 (D. Mass. June 5, 2026); *Rogerio Ramos v. Moniz*, No. 26-cv-11388-LTS, ECF No. 19 (D. Mass. Apr. 27, 2026); *Mijango Velasco v. Wesling*, No. 26-cv-11355-LTS, ECF No. 19 (D. Mass. Apr. 24, 2026); *Palma Aguirre v. Moniz*, No. 26-cv-11927-LTS, ECF No. 16 (D. Mass. May 21, 2026).

A § 1226(a) bond hearing must satisfy the requirements the First Circuit has held the Due Process Clause imposes. The government bears the burden of justifying continued detention, and must "prove that the petitioner poses a danger to the community by clear and convincing

evidence or a flight risk by a preponderance of the evidence." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39, 41 (1st Cir. 2021). Due process further requires the adjudicator to consider whether conditions of release or alternatives to detention, such as electronic monitoring, would mitigate any danger or flight risk before ordering continued detention. *See Costa v. McDonald*, No. 25-cv-13469-AK, 2026 WL 371198, at \*2–\*3 (D. Mass. Feb. 10, 2026) (holding that, by "failing to address less restrictive alternatives to detention, the Government failed to provide Petitioner with constitutionally sufficient procedure"); *Doe v. Tompkins*, No. 18-12266, 2019 WL 8437191, at \*2 (D. Mass. Feb. 12, 2019) (requiring consideration of "alternative methods to ensure the safety of the community and [petitioner's] future appearances like GPS monitoring"). To review the IJ's custody determination for constitutional adequacy, the Court considers whether the IJ applied the correct legal standard. In *Vargas,* the Court found that a Petitioner may generally show the IJ's failure to apply a correct legal standard by either (1) "point[ing] to the language of the immigration judge's opinion" or (2) "demonstrate[ing] that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019) (quoting *Hechavarria v. Whitaker,* 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019). For the former, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025). For the latter, Petitioner must show that "under the circumstances, no reasonable immigration judge could have come to" conclude Petitioner was a flight risk. *Miti v. Moniz*, No. 26-cv-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026) at \*6. *See Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 1453510 (D. Mass. May 22, 2026).

In considering these factors, an IJ's decision should be "reasonable." *Id*. An IJ may also

"consider any evidence in the record . . . when assessing flight risk, provided that such evidence is 'probative and specific.'" *Garcia v. Hyde,* 817 F. Supp. 3d 112, 127 (D.R.I. 2025)(quoting *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)). While an IJ's determination of flight risk involves discretion, it is still a legal standard that is applied to assess custody determination. *See Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 1453510 (D. Mass. May 22, 2026).   The determination of flight risk thus requires an IJ to consider multiple factors as set out in *Matter of Guerra*, and thus the IJ's application of flight risk to Petitioner's facts is reviewable. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (quoting [*17] *Wilkinson v. Garland,* 601 U.S. 209, 221, 144 S. Ct. 780, 218 L. Ed. 2d 140 (2024)) ("[A]pplication of the 'dangerousness' standard . . . [is] a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'").

### IV.    Argument

#### A. The IJ failed to consider any alternative to detention, rendering the hearing constitutionally deficient.

The IJ denied bond on the ground that "there is no bond amount that will ameliorate his risk of flight", yet the IJ failed to consider any non-monetary conditions or alternatives to detention that are designed to secure a noncitizen's future appearances. That omission is dispositive. Due process requires the adjudicator to consider "less restrictive alternatives to detention"; a failure to do so means the government "failed to provide Petitioner with constitutionally sufficient procedure." *Costa*, 2026 WL 371198, at *2–*3. Alternatives such as GPS monitoring, regular reporting, or other supervision exist precisely to address the risk the IJ identified, the risk that a released noncitizen will not appear. *See Doe v. Tompkins*, 2019 WL 8437191, at *2. By declaring categorically that no bond amount could suffice, without pausing to

consider whether conditions of supervision could reasonably assure Petitioner's appearance, the IJ short-circuited the very inquiry due process demands.

Sessions of this Court have at least twice held that an IJ's "silence as to alternatives render[s] the bond hearing constitutionally deficient," and has ordered release on that basis. *Mijango Velasco*, No. 26-cv-11355-LTS, ECF No. 19, at 5–6; *Rogerio Ramos*, No. 26-cv-11388-LTS, ECF No. 19, at 4–5. The deficiency is especially glaring here, where Petitioner is a long-time resident with two United States citizen children and deep community ties, facts that bear directly on whether measures short of detention could secure his appearance. Neither DHS nor the IJ "advance[d] a cogent argument" as to why no such measure could mitigate the asserted flight risk. *Mijango Velasco*, ECF No. 19, at 5. Because the IJ ordered continued detention without ever considering alternatives, the hearing did not comply with this Court's Order.

**B.   The IJ rested her flight-risk finding on uncorroborated I-213 allegations while disregarding Petitioner's substantial evidence and his intervening years of lawful conduct.**

The IJ grounded her entire flight-risk determination on the Form I-213, which she labeled "inherently reliable", and, in particular, on the uncorroborated assertion that Petitioner presented fraudulent documents when he sought admission roughly a quarter-century ago. The general admissibility of an I-213 does not transform every allegation within it into substantial evidence. Under controlling authority, an adjudicator may not accord a report substantial weight absent "corroborating evidence of the report's allegations." *Maurice v. Bondi*, 154 F.4th 15; *Matter of Arreguin de Rodriguez*, 21 I&N Dec. 38. The reliability and fundamental-fairness inquiries are "distinct from the additional requirement that a [report] . . . must be corroborated before the agency may give the report substantial weight." *Maurice*, 154 F.4th 15. Here, the decades-old fraud allegation was never adjudicated, yielded no fraud charge, and is otherwise

uncorroborated; the IJ nonetheless treated it as dispositive of present flight risk. Nor did DHS corroborate the criminal history it invoked: it submitted no police report or other underlying documentation for the arrests. The IJ also overstated the record in a way that confirms the unreliability of her finding. Seizing on the 2001 border encounter, she determined that Petitioner "presented fraudulent documents to immigration officials, which . . . makes him inadmissible under INA [§ 212(a)(6)(C)]," and that this "would make him subject to a fraud charge." But Petitioner is not charged with fraud. The Notice to Appear charges him only under 8 U.S.C. § 1182(a)(6)(A)(i) (present without admission or parole) and § 1182(a)(7)(A)(i)(I) (lack of a valid immigrant visa) not under § 1182(a)(6)(C)(i), the fraud-and-misrepresentation ground, and not with any criminal fraud offense. The IJ thus went further than the government itself, treating an uncharged, unadjudicated allegation as an established ground of inadmissibility and a pending fraud prosecution. She likewise went further than the Form I-213 on which she claimed to rely. That document states only that, in 2001, CBP "determined that the visa documents were fraudulent" and "denied [Petitioner] entry." It does not state that Petitioner was charged with fraud, removed on a fraud ground, or found inadmissible under § 1182(a)(6)(C). By converting a decades-old, uncorroborated border encounter into a freestanding finding of fraud-based inadmissibility and a hypothetical criminal charge that no one has ever brought, the IJ rested her flight-risk determination on speculation that neither the charging document nor the I-213 supports, precisely the kind of unsupported inference that cannot carry the government's burden as a matter of law. That is precisely the error *Arreguin* and *Maurice* forbid, and it mirrors the reliance on "uncorroborated police reports" that the Court found constitutionally deficient in *Rogerio Ramos* and *Mijango Velasco*. *See Rogerio Ramos*, ECF No. 19, at 5; *Mijango Velasco*, ECF No. 19, at 6.

Compounding the problem, the IJ did not engage with any of the equities the Petitioner presented. "Adjudicating whether to detain or release another person—a quintessential liberty decision—is one of the more serious matters resolved by judges," and "requires review and consideration of all the relevant evidence submitted." *Rogerio Ramos*, ECF No. 19, at 5. Resting a denial "on a single fact from the administrative record" while failing to "mention, let alone indicate that [the IJ] had reviewed or evaluated," the petitioner's evidence "falls well short of what due process requires." *Martinez Aguilar*, ECF No. 17, at 3; *Rogerio Ramos*, ECF No. 19, at 5. This record presented the IJ with far more than the stale, uncorroborated allegations on which she relied. Petitioner submitted roughly eighty pages of evidence documenting his family, community ties, tax compliance, rehabilitation, and eligibility for relief, none of which the IJ acknowledged. *See also Hernandez Arechiga v. Bowen*, No. EDCV 26-1516-AS, 2026 WL 1500398, at *4–*5 (C.D. Cal. May 26, 2026) (ordering release where the IJ's flight-risk denial ignored the petitioner's evidence of long residence, steady employment, and United States citizen children).

The IJ's treatment of "the passage of time" as immaterial compounds the error. The question before the IJ was not whether Petitioner posed a flight risk decades ago, but whether he poses one now. As the Court in *Mijango Velasco* has explained, a person's "conduct during those intervening years must be accounted for in any effort to meaningfully assess the risks he presently poses." *Mijango Velasco*, ECF No. 19, at 6. Petitioner's decades of stable residence, family ties, U.S. Citizen relatives, eligibility for relief from removal, tax compliance, and absence of any law-enforcement contact "cannot reasonably be ignored." *Id.* By dismissing those intervening years and elevating an uncorroborated, decades-old allegation to dispositive status,

the IJ failed to conduct the meaningful evaluation the Constitution, and this Court's Order, require.

**C.  This motion seeks enforcement of the Court's Order, not appellate review of the IJ's discretion.**

Petitioner does not ask this Court to sit as an appellate tribunal reviewing whether the IJ reached the "right" bond decision. Respondents were ordered to provide a § 1226(a) hearing "at which the question of detention was meaningfully evaluated pursuant to the statutory and constitutional law governing such hearings," and they did not. *Mijango Velasco*, ECF No. 19, at 6; *see Rogerio Ramos*, ECF No. 19, at 6 n.2 (rejecting the same exhaustion argument). Section 1226(e) poses no obstacle, as it does not bar habeas review of "constitutional claims or questions of law," and administrative exhaustion is not required where a petitioner's liberty is at stake and the agency lacks authority to resolve the constitutional claim. *See Vargas*, 2026 WL 1453510, at *5–*7. Nor does this motion turn on how the IJ weighed competing evidence. A petitioner may establish a legal-standard failure by "demonstrat[ing] that 'the evidence itself could not, as a matter of law, have supported' the immigration judge's decision to deny bond." *Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 1453510, at *8 (D. Mass. May 22, 2026) (quoting *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019)). Here, the government bore the burden of proving flight risk by a preponderance, yet, as in *Vargas*, where the same court rejected a materially identical bond order from the same office, the IJ here never worked through the governing *Matter of Guerra,* 24 I&N Dec. 37, 40 (BIA 2006) factors and instead rested on a single, decades-old, unadjudicated, and uncorroborated allegation of document fraud. Such evidence "could not, as a matter of law, support finding that Petitioner posed [a] risk of flight," least of all against Petitioner's twenty-plus years of residence, two U.S.

citizen children, tax compliance, and unblemished record of Court appearances, and without any consideration of alternatives to detention. *See Vargas*, 2026 WL 1453510, at *11. The legal sufficiency of the government's showing is a question of law this Court may resolve, and the IJ's contrary conclusion cannot render Petitioner's detention lawful. Petitioner's continued detention following a constitutionally deficient hearing therefore violates this Court's Order.

## V.  Conclusion

For the foregoing reasons, Petitioner respectfully requests that the Court grant the motion to enforce and order Respondents to release Petitioner immediately, subject to reasonable conditions of supervision to be identified and imposed within seven days; or, in the alternative, order Respondents to provide a new bond hearing that comports with due process and controlling precedent within a date certain; and order Respondents to file a status report confirming compliance.

Respectfully submitted,
Francismar Gamitto De Souza,
By and through his attorney,

*/s/ Gabriela Cerretani*                                      Dated: July 7, 2026

Gabriela J. Cerretani, Esq.
BBO # 706130
Georges Cote Law LLP
235 Marginal St
Chelsea, MA 02150

**CERTIFICATE CONFERENCE**

Pursuant to Local Rule 7.1(a)(2), counsel for Petitioner certifies that she conferred with counsel for Respondents regarding the relief requested in this motion. Respondents take no position on the motion.

Respectfully submitted,

*/s/ Gabriela Cerretani*                                   Dated: July 7, 2026
Gabriela J. Cerretani


**CERTIFICATE OF SERVICE**


I hereby certify that on the date set forth below, the foregoing document was filed through the Court's CM/ECF system and served electronically on all counsel of record.

Respectfully submitted,

*/s/ Gabriela Cerretani*                                   Dated: July 7, 2026
Gabriela J. Cerretani